UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMMY WALLACE, ET AL. | CIVIL ACTION NO. 09-4202 |
| VERSUS | SECTION: I |
| CHEVRON U.S.A. INC. F/K/A TEXACO, INC. | MAGISTRATE: 2 |

### MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF JOHN SPENCER

Chevron U.S.A. Inc. and Texaco Inc. ("Defendants") submit this Memorandum in Opposition to Plaintiffs' "Motion to Exclude Testimony of Defendants' Putative Certified Industrial Hygienist John Spencer" (Rec. Doc. 42) (hereinafter "Motion").

I.        **Introduction**

A careful review of Plaintiffs' Motion, Mr. Spencer's Report, and Mr. Spencer's Affidavit reveals the hollow rhetoric and outright misstatements which serve as the basis for Plaintiffs' Motion.  As detailed below, Mr. Spencer is qualified as an expert in the field of industrial hygiene and occupational safety, and he rigorously adhered to the well-accepted methodology and guidelines in the field of industrial hygiene specialists in rendering his opinions.  Not only do Plaintiffs misrepresent Mr. Spencer's methodology and conclusions, they also at times make outright false statements in an attempt to disparage his qualifications.  Such tactics are examples of Plaintiffs' empty and hyperbolic rhetoric that is contrary to the undisputed facts and lack substantiating evidence.  Mr. Spencer properly substantiates each and every one of his opinions with reliable and relevant scientific evidence, as well as facts supported by evidence.

In addition to this Motion, Plaintiffs have filed a separate motion seeking to exclude the opinions of three other of Defendants' experts on the basis of *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("*Daubert*").

A persistent pattern and a common theme emerge in Plaintiffs' *Daubert* motions, which can be summed up as follows:  Misstate the facts in the record; inaccurately state the opinions of Defendants' expert; misrepresent the methodology actually used by Defendants' expert; and simply ignore the reliable and relevant scientific evidence relied upon by Defendants' expert if that evidence does not support Plaintiffs'

position. Such tactics do not amount to evidence, and they certainly do not serve as a proper basis for challenging an expert's opinion under *Daubert*. Once the accurate facts are established, the reliable and relevant scientific evidence is properly considered, and the hyperbolic rhetoric is put aside, it becomes clear that Plaintiffs' Motion is devoid of any merit.

## II. Mr. Spencer Is Exceptionally Qualified As An Expert in the Field of Industrial Hygiene

Plaintiffs make every attempt to chip away at Mr. Spencer's qualifications, but those qualifications speak for themselves. The following is a highlight of Mr. Spencer's education, training, and experience, as set forth by Mr. Spencer in his Affidavit:

> Currently, I am the President of Environmental Profiles, Inc. in Baltimore, Maryland. Formerly, I was with the National Institute for occupational Safety and Health (NIOSH) and led a group of industrial hygienists conducting research for the National Occupational Exposure Survey. As an industrial hygienist for the United States Coast Guard, I conducted hundreds of exposure assessments inclusive of a wide range of products, including numerous benzene-containing materials. My responsibilities also included the management of the occupational medical monitoring program for the 5th Coast Guard District. I was President of the Chesapeake Section of the America Industrial Hygiene Association (AIHA) and was a member of the national AIHA Product Health and Safety Committee .and the Emergency Response Planning Committee. I have also authored the Health and Safety Audits Manual, published by Government Institutes, and the AIH Hazard Communication Guide, published by the AIHA. The American Board of Industrial Hygiene certifies me as an industrial hygienist and the Board of the Certified Safety Professionals certifies me as a safety professional.

(Exhibit A, para. 1).

In an attempt to discredit Mr. Spencer's eminent qualifications, Plaintiffs assert that he has never qualified as an expert in biology, chemistry, or chemical engineering. (Rec. Doc. 42-1, pp. 8-9). However, Plaintiffs' assertion is irrelevant to Mr. Spencer's qualifications as an expert in the field of industrial hygiene. Mr. Spencer explains in his Affidavit that chemistry is a significant part of assessing exposure, and that chemistry was a significant component of his training and academic coursework. But, Mr. Spencer makes the important distinction – which Plaintiffs ignore – that a "chemist" is not qualified to render expert opinions regarding industrial hygiene unless he or she has had additional, specialized training in industrial hygiene. This distinction reveals the emptiness of Plaintiffs' claim. Mr. Spencer addresses Plaintiffs' meaningless assertion in his Affidavit:

> [Plaintiffs' assertion] is irrelevant. In my July 1, 2009 testimony in another case (*Bishop v. Shell*), in response to the questions whether I consider myself to be an expert in biology or chemistry, I stated I have never been offered for expert testimony as a chemist or a biologist but that chemistry was a significant component of my training and academic coursework and is a significant part of the exposure assessment process. In this instant case, I am offered for expert testimony as a certified industrial hygienist, an area in which I am an expert. The definition of industrial hygiene is, "that science and art devoted to the anticipation, recognition, evaluation, and control of those environmental factors or stresses arising in or from the workplace, which may cause sickness, impaired health and well-being, or significant discomfort among workers or among the citizens of the community." (Fundamentals of Industrial Hygiene, Third Ed. Page 3). A biologist, chemist or chemical engineer would not be [an] appropriate person to offer as an industrial hygiene expert unless they had undergone the additional training an acquired the extensive experience necessary to properly evaluate an individual's exposures to chemical, physical, and biological agents. I do have a Bachelor of Sciences degree in Biological Sciences.

(Exhibit A, para. 12).

Plaintiffs also assert that Mr. Spencer is not qualified because he does not hold a master's or doctoral degree. (Rec. Doc. 42-1, p. 9). What Plaintiffs ignore is that such degrees are not a requisite for qualifying as an expert in the field of industrial hygiene:

> A Master's degree or Ph.D. are not requisite for offering an expert opinion as I and other experts have illustrated on multiple occasions. I have extensive experience in the field of industrial hygiene. . .The education, training, certifications, and experiences throughout my 33+-year career as an industrial hygienist qualify me to address Mr. Wallace's potential exposures to benzene in this case.

(Exhibit A, para. 13). Plaintiffs' assertion is a red herring and ignores Mr. Spencer's vast experience and thorough training in the field of industrial hygiene. Mr. Spencer clearly qualifies as an expert in that field.

Without providing any substantiating evidence, Plaintiffs sweepingly claim that Mr. Spencer was excluded from offering expert testimony regarding the plaintiff's exposure assessment in a case entitled *Lane v. Gasket Holdings, Inc*. (Rec. Doc. 42-1, p. 9). In response, Mr. Spencer states:

> Plaintiffs claimed that I was excluded from offering opinions on the plaintiff's exposure assessment in the case of *Lane v. Gasket Holdings, Inc*. and in the case of *Alden v. Bayer*. Motion to Exclude at 9. Plaintiffs' allegation is flatly incorrect with regard to both of these cases. (*See* Affidavits of William J. Sayers and Stephen G. Traflet), which are attached to Defendants' Opposition Memorandum as Exhibits B and C, respectively. I testified in both cases and a defense verdict was rendered in the *Alder (Alden) v. Bayer* case.

(Exhibit A, para. 17).

The Affidavit of William J. Sayers, lead trial counsel for defendant Gasket Holdings, Inc. in the *Lane v. Gasket Holdings, Inc.* case, makes perfectly clear that Mr. Spencer was, in fact, allowed to testify in that case. (*See* Affidavit of William J. Sayers, attached as Exhibit A-6).[1]  Mr. Sayers explained that Mr. Spencer was called as the expert Industrial Hygienist for Gasket Holdings, Inc. and was, in fact, allowed to give his expert opinion with respect to asbestos levels released during removal and replacement of Gasket Holdings, Inc.'s product. *Id.*, para. 13. Thus, Plaintiffs misrepresented what occurred in the *Lane* case with regard to Mr. Spencer.

Nor does the *Alder v. Bayer* case support Plaintiffs' claim that Mr. Spencer is not qualified. (*See* Rec. Doc. 42-1, p. 9). Stephen G. Traflet, the attorney who represented defendant Bayer Corporation in the *Alder* case, stated that Mr. Spencer testified at trial regarding the scientific principles of industrial hygiene, and specifically with regard to the levels of chemical exposures in the plaintiffs' workplace. (*See* Affidavit of Stephen G. Traflet, para. 3, attached as Exhibit A-7).[2]  Continuing, Mr. Traflet stated that no portion of Mr. Spencer's proffered testimony in the *Alder* case was barred by the trial judge. *Id.*, para. 4. And, Mr. Spencer was found to be qualified to give testimony in the field of industrial hygiene and exposure analysis. *Id.*  Simply put, the

---

[1] In his Affidavit, Mr. Spencer references Mr. Sayers' Affidavit as Exhibit B. The correct reference for Sayers' Affidavit is Exhibit A-6, as noted herein.
[2] In his Affidavit, Mr. Spencer references Mr. Traflet's Affidavit as Exhibit C. The correct reference for Traflet's Affidavit is Exhibit A-7, as noted herein.

Alder case provides no substantiation for Plaintiffs' assertion that Mr. Spencer is not qualified to assess Mr. Wallace's exposure.[3]

III. **Plaintiffs' Attacks on Mr. Spencer's Report Are Based on Misrepresentations and They Ignore Mr. Spencer's Methodology**

Plaintiffs assert a plethora of challenges to Mr. Spencer's methodology – not one of which has merit. Each challenge, as well as Plaintiffs' misstatements and misrepresentations of the evidence, are addressed in detail below.

### A. Mr. Spencer Employed Scientifically Accepted Methodology In Rendering His Opinions

Plaintiffs claim that Mr. Spencer employed "no methodology in this case" and that he made no independent calculation of benzene exposure. (Doc. 42-1, p. 5). Mr. Spencer's response is set forth below:

> In fact, as testified to in a recent deposition in this case, I identified the specific methodology used to scientifically assess the potential exposure of Mr. Wallace to benzene as alleged. The method is defined in the standard industrial hygiene text cited on several occasions by the plaintiff's industrial hygiene expert. The method is defined in the AIHA publication, "Strategies for Assessing and Managing Occupational Exposures" I reviewed the workplace environment, described tasks, the form of the product and the relevant exposure controls. **As noted in my report, after reviewing the available information, there was insufficient data to conduct a scientifically valid assessment of Mr. Wallace's alleged benzene exposure. The plaintiff's industrial hygiene expert came to a similar conclusion as stated in his 29 September 2010 report: "I have not estimated Mr. Wallace's benzene exposre due to cleaning jacket tools because I lack necessary information concerning that task. Interestingly he lacked specifics of the hand washing activity but chose to input unsupportable assumptions when conducting that particular**

---

[3] The mere fact that a court places greater weight on the conclusions of an opposing expert is certainly not a basis for disqualifying an expert. The important and undisputed fact is that Mr. Spencer qualified as an expert in industrial hygiene in the *Alder* case, and he was allowed to testify regarding his expert opinions.

> **assessment using a Near Field – Far Field model.** I also employed the same Near Field – Far Field model as the plaintiff's industrial hygiene expert when assessing Mr. Wallace's inhalation exposure. **As stated in my deposition I assumed Mr. Wallace used benzene to clean his hands and in fact used all other assumptions presented by the plaintiff except wind (air) speed. I simply replaced the air speed in the model from 96.3 feet per minute (fpm) to 660 fpm. The 660 fpm (7.5 miles per hour) was the reported 5 year average reported by NOAA for the Baton Rouge area. The effect changing this one factor resulted in reducing the plaintiff's industrial hygiene result from 4.5 parts per million year (ppm-yr) to 0.66 ppm-yr.**

(Exhibit A, para. 5) (emphasis provided).

Additionally, Mr. Spencer responded to Plaintiffs' allegation that he offered no reliable basis for discounting Mr. Wallace's sources of exposure and the testimony of Mr. Barnes, a coworker of Mr. Wallace:

> Plaintiffs assert that I offered no reliable basis for discounting Mr. Wallace's sources of exposure and the testimony of Mr. Barnes, a coworker of Mr. Wallace. (Motion, p. 5). The plaintiff's chose to ignore the testimony of the owner (Mr. Kirk Williams, III) of Kirk's Service, who the plaintiff's alleged delivered the benzene to Mr. Wallace's workplace, and the testimony of Mr. Glen Jackson, production worker and later manager of Mr. Wallace's place of employment. Both Mr. Williams and Mr. Jackson, who provided deposition testimony after my report was presented, but before my deposition or the deposition of the plaintiff's industrial hygiene expert, indicated that "benzene" was NOT delivered or used at Mr. Wallace's workplace (Anderson Dunham).

(Exhibit A, para. 6).

Mr. Spencer provides ample reasons, from a scientific standpoint, regarding his methodology. His detailed explanations set forth above, based upon sound scientific principles, directly refute Plaintiffs' claims.

> **B. In Accordance With OSHA, ACGIH, and NIOSH Standards, Mr. Spencer Did Not Perform A Dermal Exposure Assessment**

Plaintiffs sweepingly assert that Mr. Spencer "improperly" and "summarily" rejects dermal modeling. (Rec. Doc. 42-1, p. 10). However, in his Report, Mr. Spencer explains, in great detail, the reasons why it is not scientifically appropriate to conduct a separate assessment for dermal exposures:

- Dermal exposures were accounted for in the development of the OSHA benzene standard. . . OSHA does not recognize dermal modeling as an accepted industrial hygiene practice. . . According to the OSHA Technical Manual, "There are currently no surface contamination criteria or quantifications for skin absorption included in the OSHA standards."

- NIOSH, in its Criteria For a Recommended Standard (1974) did not recommend quantifying dermal exposures.

- ACGIH, in its Documentation of the TLV for Benzene (2001), did not recommend quantifying dermal exposures.

- There is no occupational dermal exposure limit for benzene. A separate dose calculation was not added to the inhalation dose when developing the occupational health standards, i.e., OSHA Permissible Exposure Limit, ACGIH TLV, and NIOSH REL. OSHA, ACGIH and NIOSH neither require nor recommend quantifying dermal exposures in specific health standards.

- The tools to quantify dermal exposure to organic solvents such as benzene and have not been standardized nor validated.

> I am very familiar with the benzene dermal dose assessment literature and thus can accurately comment on the fact that various studies have been conducted using different methodologies. In fact I have testified to this very specific issue in a hearing in New Mexico (*Andrews v. Atlantic Richfield*) in which the Plaintiffs' expert in this case [Mr. Nicas] was excluded from presenting his dermal dose testimony. I have also presented on the scientific limitations of dermal dose quantification at a recent American Industrial Hygiene Conference (2009).
>
> The dermal flux model used by Dr. Nicas in conducting his exposure assessment has not been standardized nor validated for conducting occupational exposure assessments relevant to this case. In addition, the dermal exposures were accounted for in the development of the OSHA benzene standard. There is no dermal exposure limit and OSHA, ACGIH, and NIOSH neither require nor recommend quantifying dermal exposures. There is currently no accepted OSHA, NIOSH or ACGIH (the occupational health standard setting organizations) method for quantifying dermal exposures.
>
> I also noted in my Report that Dr. Nicas has testified that he has never conducted a quantitative dermal dose assessment for comparison with the occupational health standards and guidelines in his previous practice outside of litigation. (Exhibit A-1, p. 8, citing Deposition of Mark Nicas in *Andrews*, dated May 9, 2008).

(Exhibit A, para. 10).

Plaintiffs misrepresent Mr. Spencer's testimony regarding dermal exposure in the *Bishop v. Shell* case. Mr. Spencer provided this response to Plaintiffs' claim:

> Plaintiffs extracted testimony from my July 01, 2009 deposition in the *Bishop v. Shell* matter where I agreed to their statement that there are several studies related to calculating a dermal dose. Motion to Exclude at 9. However, this is a misrepresentation and an incomplete extraction of my testimony: I continued on to say that the dermal studies are all done differently and, "there is no standardized and accepted and validated method for doing it."
>
> In that same deposition, I testified that the routes of exposure to benzene are typically via inhalation and potentially dermal uptake. . .I mentioned

> ingestion as an improbable, but possible route of exposure. . .I also stated, "if we are concerned about dermal dose in addition to inhalation dose, we collect biological samples, blood or urine samples and have that evaluated, and that's why we do not use a dermal calculation to determine the significance of exposure.". . .My opinions were accurately stated in my report in this case.

(Exhibit A, para. 14).

Contrary to Plaintiffs' representation, Mr. Spencer in fact provides numerous reasons why dermal modeling/dermal exposure assessments is not an accepted industrial hygiene practice. Plaintiffs' position on this issue is devoid of merit.

### C. Mr. Spencer is Qualified To Render Opinions Regarding The Duties Of Manufacturers Related to Safety

Plaintiffs assert that Mr. Spencer's opinions regarding the duties of manufacturers related to safety are improper because they are allegedly beyond the scope of his expertise. (Rec. Doc. 42-1, p. 7). However, Mr. Spencer explained in detail that his experience and training in field of industrial hygiene includes and, indeed, requires knowledge of parties' regulatory responsibilities to convey safety information:

> Regarding the scope of expertise, I am a Certified Safety Professional and Certified Industrial Hygienist. My experience in providing safety training, safety consulting, the development of safety and health programs, and hazard determination, require a thorough understanding of various parties' regulatory responsibilities to convey hazard information. . .
>
> These responsibilities are outlined in various professional guidance documents and Federal standards, including the OSHA Hazard Communication Standard, which clearly states that the duty to provide safety and health training is the responsibility of the employer and not the product manufacturer (1910.1200 (h)). Product manufacturers are not required, nor are they able to train the end users, such as the Plaintiff, Mr. Wallace. The applicability of these regulations are spelled out within the

...

> standard and are not beyond my expertise but part of the basic tenets used in the safety and health field. In fact, I served on the national committee of the AIHA Product Health & Safety. As a member of this committee, I put forth technical presentations and roundtables focused on product risk assessment. Our committee was also responsible for peer reviewing the American National Standards Institute's (ANSI) guidelines for preparing material safety data sheets (MSDSs) and product warning labels.

(Exhibit A, para. 7). Plaintiffs' assertion on this issue is unsubstantiated and lacks any merit.

### D. Plaintiffs Miscite Mr. Spencer's Report Regarding A Manufacturer's Duty

Plaintiffs misrepresent Mr. Spencer's opinions related to a manufacturer's duty to warn, which Mr. Spencer thoroughly addresses in his Affidavit:

> Plaintiffs also allege that my testimony regarding a manufacturer's duty "to provide safety training" and is "incorrect." (Motion, p. 7). They then cite a Louisiana case, stating that the court "held that the manufacturers had a duty to warn users of the product of its dangers." (Motion, p. 7). The innuendo is that I opined that manufacturers did not have a duty to warn users of the product of its dangers. **I did not make such a statement in my Report, and Plaintiffs' misrepresent the findings in my report.**
>
> **What I actually stated is that the duty of an employer under the OSHA regulations is to provide safe and healthful workplaces.** (Exhibit A-1, p. 4). I explained that information on the potential hazards of benzene was readily available to Mr. Wallace's employer (Anderson Durham) at the time of Mr. Wallace's employment, and that there were regulatory programs, policies and procedures in place to ensure worker safety at that time. Thus, it was Mr. Wallace's employer who was responsible for providing education regarding the safe work practices with the products employees such as Mr. Wallace used, evaluating the potential exposures encountered by its employees, and ultimately responsible for protecting Mr. Wallace's health in the workplace. (Exhibit A-1, pp. 5-6).
>
> \* \* \*
>
> **Plaintiffs' statements, as discussed in the preceding paragraph, mix apples and oranges. Specifically, they fail to distinguish between the**

> **duty of a manufacturer to warn, and the duty of an employer to provide a safe workplace and train its employees regarding safe work practices for the products they use.**

(Exhibit A, paras. 8-9) (emphasis provided).

In similar fashion, Mr. Spencer also addressed this issue in evaluating the report of Vernon Rose, another of Plaintiffs' experts:

> In evaluating the report of Vernon Rose. . .I addressed the manufacturer's duty to warn Mr. Wallace's employer (as distinguished from the employer's duty to provide a safe workplace for its employees). I reviewed Dr. Rose's statements discussing the Material Safety Data Sheets (MSDS) and setting forth the warning labels Texaco placed on its benzene products. (Exhibit A-1, p. 9). **I concluded that the language on the warning contained on the benzene product labels and the MSDS from Texaco "were more than sufficient to convey the necessary information to Mr. Wallace's employers in order for them to develop the necessary safety and health programs protective of his health."** (Exhibit A-1, pp. 9-10).

(Exhibit A, para. 9) (emphasis provided).

Mr. Spencer dispels the misleading claims made by Plaintiffs, and he provides a thorough and reasoned explanation of his conclusions.

### E. Plaintiffs Misrepresent Mr. Spencer's Testimony in *Bishop v. Shell* Regarding His Consulting Services

Plaintiffs have carefully selected statements from Mr. Spencer's prior deposition testimony in the *Jo Ann Bishop v. Shell* case ("*Bishop*"), ignored his remaining testimony, and twisted and misconstrued those hand-picked statements to fit their biased and self-serving position. Specifically, Plaintiffs state that Mr. Spencer "routinely testifies solely for the defendants because that is who he is able to get support scientifically and that is who he looks for". (Doc. 42-1, pp. 9-10). In his Affidavit, Mr.

Spencer clarifies his deposition testimony and sets forth the accurate facts regarding his work as an expert in the field of industrial hygiene:

> Plaintiffs stated that I have been an expert in over 200 cases and that I routinely testify "solely for the defendants because that is who he is able to get to support scientifically and that is who he looks for." Motion to Exclude at 9-10. The question was asked in my July 01, 2009 deposition in the *Bishop v. Shell* matter whether I routinely testify solely on behalf of defendants because I mean that's who I am able to get to support scientifically and, yes I mean that's what I look for. (Exhibit A-2, p. 46). I stated that "routinely" is correct but not "solely." *Id*. I also stated that I had worked maybe five to ten times directly for the plaintiff. *Id*. I further clarified the statement, "I am able to support scientifically" with the explanation, "that there is sufficient information, scientific information to support my position." *Id*. Counsel for plaintiffs then asked about the statement, "and I mean that's what I look for." *Id*. To expand on this, I responded: "I review literature. I review studies, published and unpublished studies, other government documents that are available, and draw upon my own experience which has been involved, extensive experience in monitoring exposures in a variety of different work places." *Id*. at 47. I look for scientifically defensible cases, and not defendants in particular, as the Plaintiffs' misstatement of "who" instead of "what" would suggest.

(Exhibit A, para. 15). Plaintiffs present a contorted misinterpretation of Mr. Spencer's prior deposition testimony, which lends no credence to their argument. This is yet another example of Plaintiffs' "typical tactics" – high in rhetoric, but lacking any substantiating evidence.

### IV.        Conclusion

Mr. Spencer's exceptional qualifications in the field of industrial hygiene, based upon his education, training, and more than thirty years of experience, cannot be genuinely disputed. Nor can the substance of Mr. Spencer's Report and Affidavit be

genuinely disputed, despite the plethora of misstatements and misrepresentations set forth by Plaintiffs in their Motion.  Mr. Spencer's opinions are overwhelmingly substantiated by reliable and relevant scientific evidence, as well as the facts which are supported by evidence.  Plaintiffs' "arguments" do not change the evidence.  For all of the reasons set forth herein, Defendants respectfully request that Plaintiffs' Motion be denied in all respects.  Defendants further request that this Court allow oral argument on Plaintiffs' Motion.

    Respectfully Submitted,

    */s/ Allison N. Benoit*
    Gary A. Bezet, Trial Attorney (#3036)
    Gayla M. Moncla (#19713)
    Barrye Panepinto Miyagi (#21794)
    Robert E. Dille (#23037)
    Gregory M. Anding (#23622)
    Janice M. Culotta (#23460)
    Carol L. Galloway (#16930)
    Allison N. Benoit (#29087)
    Vionne M. Douglas (#31447)
    KEAN, MILLER, HAWTHORNE,
    D'ARMOND, McCOWAN & JARMAN, L.L.P.
    One American Place, 18th Floor
    P. O. Box 3513
    Baton Rouge, LA  70821
    Telephone: (225) 387-0999
    Allison.Benoit@keanmiller.com
    **Attorneys for Chevron U.S.A. Inc. and Texaco Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2010, a copy of the foregoing Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF

system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

          /s/ Allison N. Benoit
          Allison N. Benoit (#29087)
          KEAN, MILLER, HAWTHORNE, D'ARMOND,
          McCOWAN & JARMAN, L.L.P.
          One American Place, 18th Floor
          P. O. Box 3513
          Baton Rouge, LA  70821
          Telephone: (225) 387-0999
          Allison.Benoit@keanmiller.com
          ***Attorneys for Chevron U.S.A. Inc. and Texaco Inc.***