UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAMMY WALLACE, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-4202** |
| **CHEVRON U.S.A. F/N/A TEXACO, INC.** | **SECTION "I"** |

## ORDER AND REASONS

Before the Court is plaintiffs' motion *in limine* to exclude the expert witness opinion and testimony of defendant's industrial hygiene expert, John Spencer ("Spencer").[1]  Defendant, has filed an opposition.[2]  For the following reasons, plaintiffs' motion *in limine* is **DENIED**.

### *BACKGROUND*

As alleged by plaintiffs, Willie Wallace ("Wallace") worked as a laborer for Anderson Dunham, Inc. from 1966 to 1978.[3]  While employed at Anderson Dunham, plaintiffs assert that Wallace used Texaco's gasoline, diesel fuel, and benzene to clean equipment, spills, and parts.[4]  Plaintiffs also assert that Wallace used pure benzene to mix chemicals, wash equipment, and to wash his hands on a regular basis.[5]

Wallace was admitted to the hospital in or about July 2008, complaining that he had been suffering from neck pain for several weeks and he died a short time later.  According to

---

[1] R. Doc. No. 42.

[2] R. Doc. No. 63.

[3] R. Doc. No. 43-1, pg. 2.

[4] *Id.*

[5] *Id.*

plaintiffs, Wallace's death certificate states that he died of multiple myeloma which is a hematological disorder.

Plaintiffs assert that Wallace's alleged multiple myeloma was caused by benzene exposure. Plaintiffs further state that defendant, Chevron USA, Inc. f/k/a Texaco, Inc. ("Texaco"), produced and distributed benzene to Wallace's employer. Asserting both negligence and strict liability claims against Texaco, plaintiffs argue that Texaco's production and distribution of benzene resulted in Wallace's death.

*LAW AND ANALYSIS*

**I.    STANDARD OF LAW**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v.*

*Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238, 249-50 (1999).

  A number of nonexclusive factors may be considered with respect to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584.  The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.' " (citing *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176, 143 L.Ed.2d at 253)).  "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

  With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).  "'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the

dispute.'" *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

When expert testimony is challenged under *Daubert*, the burden of establishing admissibility rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

According to defendant, Spencer is an industrial hygienist who is certified by the American Board of Industrial Hygiene. He has thirty-three years of experience practicing industrial hygiene. According to Spencer and defendant, "[t]he classic definition of industrial

hygiene is the science and art related to the anticipation, recognition, evaluation, and control of hazards arising in or from the workplace."[6]  Plaintiffs do not dispute such definition.

First, plaintiffs argue that Spencer is not qualified to opine with respect to Wallace's alleged benzene exposure, or the lack thereof, because Spencer only "has an under graduate [sic] degree in biological sciences and does not have a Masters or PhD."[7]  Furthermore, plaintiffs assert that because "Spencer has never qualified as an expert in biology, chemistry, or chemical engineering," he should be precluded from testifying in this case.[8]

Plaintiffs' argument is misguided.  Industrial hygiene experts such as Spencer are regularly permitted to testify in personal injury cases involving occupational exposure to benzene.  *See, e.g.*, *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668-72 (5th Cir. 1999).  Additionally, the strength of Spencer's credentials goes to the weight of his testimony and not its admissibility. *Williams v. Warren*, No. 99-41078, 2001 WL 498501, at *2 (5th Cir. 2001) (unpublished).  Plaintiffs may cross-examine Spencer at trial with respect to any alleged weaknesses with respect to his resume.[9]

Second, with respect to Spencer's contention that no scientifically reliable estimate of Wallace's alleged benzene exposure can be made, plaintiffs argue that Spencer employed "no

---

[6] R. Doc. No. 63-2.

[7] R. Doc. No. 42-1, pg. 8.

[8] R. Doc. No. 42-1, pgs. 8-9.

[9] Lacking any substantiating evidence, plaintiffs also assert that Spencer's report and testimony should be excluded in this case because at least one other court has precluded Spencer from testifying in a factually similar case.  Defendant has refuted the contention that Spencer was excluded from testifying in such case with affidavits from lawyers involved in the matter.  Nevertheless plaintiffs may cross-examine Spencer at trial with respect to any instance in which a court may have excluded his expert testimony in the past, provided they have a good faith basis for doing so.

methodology in this case" and that he made no independent calculation of benzene exposure.[10] Nevertheless, the Court's review of Spencer's expert report and the affidavit of Spencer that was submitted in connection with defendant's response strongly suggests otherwise. Indeed, in his expert report, Spencer stated that:

> As a certified industrial hygienist, I rely upon the following basic tools in order to conduct an exposure assessment of personal occupation exposures such as those experienced by Wallace:
> 1. a characterization of the environment in which the exposure occurred (including room size and ventilation rate);
> 2. a characterization of the job and tasks conducted in that environment (including frequency and duration of exposures);
> 3. a characterization of the productions (including volatility);
> 4. a review and analysis of historical exposure data collected during tasks involving the appropriate handling of the product;
> 5. evaluation of exposure data to determine whether accepted air sampling and analytical techniques and/or modeling were used to assess the magnitude of the exposures; and
> 6. a characterization of the relevant safety and health regulations and the associated exposure limits.[11]

The Court concludes that Spencer arguably employed a sufficiently reliable methodology in reaching his conclusion that no scientifically reliable estimate of Wallace's alleged benzene exposure can be made. As is evident from Spencer's report, in applying such methodology Spencer determined that insufficient data existed to draw a reliable conclusion with respect to Wallace's alleged benzene exposure. To the extent that plaintiffs believe that Spencer failed to take into account data or witness testimony that would have caused Spencer to reach different

---

[10] R. Doc. No. 42-1, pg. 5.

[11] R. Doc. No. 63-2, pg. 4.

conclusions, plaintiffs may cross-examine Spencer at trial with respect to his alleged failure to address such data or witness testimony.[12]

Plaintiffs also argue that Spencer's expert report improperly rejects dermal modeling as a method of determining an employee's alleged benzene exposure. More specifically, plaintiffs assert that Spencer's expert report improperly rejects the use of dermal modeling by Dr. Nicas, one of plaintiffs' experts.

In his expert report and in an affidavit submitted in connection with defendant's response to plaintiff's motion *in limine*, Spencer explains that, in declining to use dermal modeling as a method for determining Wallace's alleged benzene exposure, Spencer relied on reports and guidelines promulgated by the Occupational Safety and Health Administration (OSHA) and a number of industrial hygiene organizations. As Spencer states:

> When developing the occupational health standards and guidelines for benzene and benzene-containing mixtures, OSHA and other standard and guideline setting agencies discussed the dermal route of exposure and recommended efforts to minimize skin exposures. However, each relevant agency, administration, and organization has relied on air monitoring as the surrogate for evaluating total exposure dose resulting from both dermal and inhalation exposures to benzene or benzene-containing products. It is clear . . . that none of the relevant governmental and industrial hygiene organizations use dermal modeling to quantitatively assess occupational dermal exposures for comparison with existing occupational health standards and guidelines.[13]

---

[12] To the extent that plaintiffs argue that Spencer's report and opinions should be excluded because they impermissibly call into question the credibility of Clyde Barnes, a witness who has testified that Wallace was exposed to benzene while working for Anderson Dunham, the Court disagrees. Spencer's report simply states that, "Mr. Barnes's testimony and affidavit were woefully inadequate to conduct modeling that would produce a reliable estimate of his potential benzene exposures." R. Doc. No. 63-2. Additionally, defendant asserts that other witnesses have testified during depositions that Wallace was never exposed to benzene. R. Doc. No. 63, pg. 8.

[13] R. Doc. No. 63-2, pg. 7.

The Court concludes that the reports and guidelines issued by OSHA and other industrial hygiene organizations arguably provide Spencer with a sufficiently reliable basis for rejecting dermal modeling. To the extent that plaintiffs believe that Spencer has misapplied the principles found in such reports or guidelines, or that Spencer should have relied on different resources in reaching his conclusions with respect to dermal modeling, plaintiffs may cross-examine Spencer at trial.

Finally, plaintiffs confusingly assert that Spencer's expert report and testimony should be excluded because, "Spencer opines that Texaco, as the manufacturer of benzene, has no duty to be knowledgeable about its product or warn users of the hazards."[14] Nevertheless, the Court's independent review of Spencer's expert report and the affidavit submitted by Spencer in connection with defendant's response, reveals that Spencer has offered no such opinion. Instead, Spencer opines in his report that Wallace's *employer*, Anderson Dunham, "was responsible for providing education regarding the safe work practices with the products [used at Wallace's work], evaluating the potential exposures encountered by its employees, and ultimately was responsible for protecting his health."[15]

Plaintiffs' reasoning is flawed. Simply because an employer may owe a duty of care to its workers does not necessarily mean that other parties, such as the manufacturer of the products used in the employer's business, may not also owe a duty of care to such workers. Spencer has only testified that Anderson Dunham was responsible for protecting Wallace's health. Spencer has not testified that defendant did not also bear such responsibility.

---

[14] R. Doc. No. 42-1, pg. 14.

[15] R. Doc. No. 63-2, pg. 10.

## **CONCLUSION**

Accordingly, for the aforementioned reasons, **IT IS ORDERED** that plaintiffs' motion is **DENIED**.

New Orleans, Louisiana, December __28th__, 2010.

*[signature]*

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**